USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 9/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER WEDDLE,

Plaintiff,

-against-

CFA INSTITUTE,

Defendant.

24 Civ. 5308 (AT) (HJR)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Heather Weddle, brings this action asserting disability discrimination and retaliation claims against her former employer, CFA Institute ("CFA"), under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 *et seq.* *See* Compl. ¶¶ 92–128, ECF No. 1. CFA moves for summary judgment. *See* Mot., ECF No. 40. Pursuant to an order of reference, the Honorable Henry J. Ricardo issued a report and recommendation ("R&R") recommending that the Court grant Defendant's motion. *See* R&R at 1, ECF No. 55; Objs., ECF No. 59; Resp., ECF No. 62. For the reasons stated below, the Court overrules Weddle's objections, adopts the R&R, with one clarification, and grants CFA's motion for summary judgment.

**DISCUSSION**

I. Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections, the Court reviews *de novo* those portions of the R&R to which the objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025) ("Where a litigant's objections take issue with a specific

legal conclusion in the report and recommendation, they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge." (quotation omitted)). However, the Court reviews for clear error "when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (citation omitted). Moreover, "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citation omitted).

The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

## II. Analysis

The Court assumes familiarity with the facts and procedural history of this case outlined in the R&R, *see* R&R at 1–4, and only repeats facts as necessary for its analysis.

### A. The ADA and NYCHRL

Actions alleging disability discrimination in violation of the ADA are subject to the *McDonell Douglas* burden-shifting framework. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). When no direct evidence of discrimination is available, the *McDonnell Douglas* framework is used to

"assess whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Bart v. Golub Corp*., 96 F.4th 566, 569 (2d Cir. 2024).

An ADA plaintiff's first step under *McDonnell Douglas* is to establish a prima facie case of disability discrimination by demonstrating that: "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *McMillan*, 711 F.3d at 125 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). At the second step of the analysis, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its adverse action. *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer articulates such a reason, the burden shifts back to the plaintiff at step three to demonstrate that the defendant's proffered justification was pretextual and that "more likely than not the employee's [disability] was the real reason for the discharge." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 249 (S.D.N.Y. 2015) (quoting *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996)).

Disability discrimination in violation of the NYCHRL is also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Nieblas-Love v. New York City Hous. Auth*., 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016). But the analysis must account for the more plaintiff-friendly standard under the NYCHRL, which is to "be construed liberally for the accomplishment of [its] uniquely broad and remedial purposes." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act § 7 (amending N.Y.C. Admin. Code § 8–130)). As such, a defendant under the NYCHRL is entitled

to summary judgment at step two of *McDonnell Douglas* "only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." *Mihalik*, 715 F.3d at 110 n.8 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 n. 27 (1st Dep't 2009)).

B. Pretext Analysis

Weddle's first three objections pertain to Judge Ricardo's analysis of pretext under the third step of the *McDonnell Douglas* framework. Because Weddle does not object to Judge Ricardo's conclusion that she fails to show she qualifies as a person with a disability under the ADA, and because the Court finds no clear error in the R&R's analysis, Weddle's ADA claims can be dismissed on this basis.[1] Weddle does, however, object to the conclusion that she does not qualify as a person with a disability under the NYCHRL. *See* Objs. at 8 ("The NYCHRL's definition of disability is broader than the ADA's and does not require proof that an impairment substantially limits a major life activity."). Because the Court does not decide that issue, the Court must consider Weddle's first three objections regarding pretext.

In her first objection, Weddle argues that the R&R did not properly consider the cumulative record in determining that she had offered insufficient evidence of pretext in connection with CFA's decision to fire her. *See* Objs. 4–5. In her second and third objections, Weddle argues that specific facts—namely, her Performance Improvement Plan (objection two) and her account of the September 6 meeting preceding her termination (objection three)—could support an inference of pretext. *See* Objs. 5–7. The Court addresses each in turn, applying a *de novo* standard of review.

[1] Weddle admits that her strained relationship with her supervisor and the work environment at CFA directly caused her anxiety, *see* Compl. ¶¶ 2–4; therefore, Judge Ricardo's conclusion that she is not disabled under the ADA is not clearly erroneous. *See Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) ("[E]mployees who are precluded only from doing their specific job, or from working under a specific supervisor, do not have a 'disability.'").

1. Cumulative Impact of the Factual Record

The cumulative factual record does not support an inference that CFA's legitimate, non-discriminatory justification for firing Weddle was pretextual. CFA has presented evidence of longstanding and consistent concerns pertaining to Weddle's behavior at work. *See* Def. 56.1 ¶¶ 8–9, 13–16, ECF No. 42. It is undisputed that CFA's concerns predate both Weddle's disclosure of her anxiety to CFA and the time at which Weddle alleges she developed symptoms of anxiety. *See id.* ¶ 16 (email stating that CFA considered placing Weddle on a performance improvement plan ("PIP") on about July 12, 2022, before she began reporting to supervisor Randi Tolber); *see also* Compl. ¶ 2 (alleging that Weddle had "never before experienced" clinical anxiety prior to being supervised by Tolber).

Weddle contends that she has successfully rebutted CFA's proffered justification because the disciplinary process was "active and unsettled" during a period where she was "simultaneous[ly]" engaged in an accommodations process. Objs. 4–5. She states that CFA leadership discussed her accommodations and disciplinary processes in the same emails, including in one message where her supervisor asked for the outcome of a conversation about accommodations to determine "timing and next steps" for the PIP. *Id.* at 4.[2] She also emphasizes that "material decisions [were] made after CFA acquired disability-related knowledge" and that "the implementation of discipline remained discretionary after CFA learned of Plaintiff's condition." *Id.* at 4–5.

The Court holds that these facts are insufficient to support a rational inference that CFA fired Weddle because of a disability. Given CFA's documented, consistent concerns about her behavior that predated the development and disclosure of Weddle's anxiety, no reasonable jury

[2] Weddle does not cite an ECF number for these communications in her objections, and the R&R notes Weddle's assertions about the contents of certain CFA staff messages have been inaccurate. *See* R&R 15. The Court assumes that Weddle has accurately represented the contents of these messages.

could find that Weddle's disability disclosure or accommodations request caused or motivated the CFA to fire her. The facts Weddle points to, including the simultaneity of her accommodations and disciplinary processes, *see* Objs. at 5, are merely appeals to temporal proximity. However, as Weddle acknowledges, *see id.* at 4, temporal proximity alone is insufficient to demonstrate pretext. *See, e.g.*, *Vitti v. Macy's Inc.*, 758 F. App'x 153, 158 (2d Cir. 2018) (ADA); *Forrester v. Corizon Health, Inc.,* 752 F. App'x 64, 66 (2d Cir. 2018) (NYCHRL). The rest of the evidence Weddle identifies demonstrates only that CFA fired her with knowledge of her anxiety. *See generally* Objs. This, too, is insufficient to defeat summary judgment. *See, e.g.*, *Clark,* 96 F. Supp. 3d at 251, 257 (holding that even though management was aware of the Plaintiff's disability leave, temporal proximity between the disability leave and termination was insufficient to establish pretext). Finally, given the CFA's years-long consideration of a PIP, a single communication where a supervisor asks about the accommodations process prior to finalizing a PIP, *see* Objs. at 4, cannot support a rational inference that CFA fired her because of her anxiety. Therefore, the Court adopts Judge Ricardo's conclusion that Weddle failed to carry her burden at step three of *McDonell Douglas*, whether applying the ADA or the NYCHRL standard. *See* R&R at 12–15. Weddle's first objection is, therefore, overruled.

2. Performance Improvement Plan

Weddle next argues that the R&R did not consider the design, administration, and completion of the PIP as evidence that the CFA's reason for termination was pretextual. The PIP weighs in favor of CFA's motion for summary judgment, as it demonstrates that CFA had longstanding concerns about the same behavior for which they ultimately terminated Weddle.

The record shows, and the R&R correctly notes, that CFA first considered placing

Weddle on a PIP for behavioral issues on about July 12, 2022. *See* Def. 56.1 ¶ 16; R&R at 2. By Weddle's own admission, this was before she developed anxiety and before she disclosed her symptoms to CFA. *See* Compl. ¶¶ 3–4. Although Weddle notes that the PIP proceeded at the same time as the accommodations process, *see* Objs. 4–5, as the Court already explained, this evidence alone does not permit an inference of discrimination given CFA's undisputed evidence that the PIP was implemented for pre-anxiety behavioral issues. *See* Def. 56.1 ¶¶ 8–9, 13–16. Weddle seeks to cast doubt on the PIP's legitimacy by pointing to evidence that she was restricted from "interacting with key stakeholders," which she claims is in "tension" with the PIP's "asserted remedial purpose." Objs. at 6. But the email she cites indicates that these restrictions resulted from the same concerns about behavior and professionalism that justified Weddle's ultimate termination—supporting CFA's position, not Weddle's. *See* Pl.'s Decl. at 477–78, ECF No. 31-1.

Finally, Weddle points out that she was told that she successfully completed the PIP, which she suggests creates a "permissible inference" that her performance issues were resolved and could not be the true justification of her subsequent termination. Objs. at 6. But she mischaracterizes the record. Even if CFA initially concluded she had fully rectified her behavior upon completion of the PIP, CFA has presented uncontested evidence that these concerns subsequently resurfaced in September. *See, e.g.*, Bezek Decl., ¶¶ 14–19, ECF No. 41. And, as CFA argues, *see* Resp. at 4, it would not serve the purpose of a pretextual PIP to tell Weddle that she had successfully completed it.

Therefore, the PIP does not provide sufficient evidence for Weddle to avoid summary judgment, whether applying the ADA or the NYCHRL standard. Objection two is, therefore, overruled.

3. Plaintiff's Testimony Regarding the September 6 Meeting

Third, Weddle's testimony regarding the September 6 meeting preceding her firing does not support an inference of pretext because the material aspects of the meeting are uncontested and align with CFA's proffered justification for Weddle's termination. Weddle denies that she berated her supervisor during the meeting and disputes whether she made specific statements about her supervisor's leadership abilities. *See* Pl. 56.1 at 15, ECF No. 48. But Weddle nonetheless acknowledges expressing "frustration and disappointment" during the meeting because of her "Needs Improvement" rating, *id.*, and concedes that her supervisor "became flustered and ended the call," Objs. at 7. "In a discrimination case … [the Court is] interested in what motivated the employer; the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). Weddle's testimony confirms, rather than contradicts, CFA's evidence that her supervisor experienced her communication during the September 6 meeting as aggressive.

Therefore, Weddle's testimony regarding the September 6 meeting does not provide sufficient evidence for Weddle to avoid summary judgment, whether applying the ADA or the NYCHRL standard. Objection three is, therefore, overruled.

C. NYCHRL Standard

Courts must analyze claims under the NYCHRL "separately and independently from any federal and state law claims," construing its provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d 109 (citing Restoration Act § 1) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78(2011) (quotation marks omitted)). The NYCHRL defines disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code

§ 8-102. This definition is broader than the ADA and does not require a showing that the alleged disability substantially limits a major life activity. *See Arazi v. Cohen Bros. Realty Corp.,* No. 20 Civ. 8837, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022). To prevail on her NYCHRL claim, a plaintiff "need only show . . . that she is treated 'less well' because of discriminatory intent" related to her disability. *Mihalik*, 715 F.3d at 110.

Even under the more lenient standards of the NYCHRL, CFA's motion for summary judgment must be granted for the reasons detailed above. The factual record demonstrates that CFA terminated Weddle because of behavioral concerns that predated her development and disclosure of anxiety. *See* Compl. ¶ 3 (Weddle's allegation that she developed anxiety at earliest in September 2022); *see also* Def. 56.1 ¶¶ 8–9, 13–16 (describing CFA's actions regarding Weddle's performance pre-September 2022). Weddle adduces no evidence that could permit a jury to find that CFA's well-documented concerns about her conduct were not genuine, as she points only to facts showing that CFA continued to address these preexisting issues once it became aware of Weddle's anxiety. *See* Objs. 9. Weddle's fourth objection is, therefore, overruled, and the CFA is entitled to summary judgment because "the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." *Mihalik*, 715 F.3d at 110 n. 8.

Because Weddle has not sufficiently shown that CFA fired her because of her disability, CFA is entitled to summary judgment, and the Court need not address whether anxiety associated with a specific supervisor qualifies as a disability under the NYCHRL. The Court does not specifically adopt or reject the R&R as to this issue.

**CONCLUSION**

The Court has reviewed *de novo* those portions of the R&R to which Weddle properly objects and has reviewed the remainder of the R&R for clear error.[3] For the reasons stated above, the Court OVERRULES Weddle's objections, ADOPTS the R&R, with the clarification stated above, and GRANTS CFA's motion for summary judgment.

This action is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 40 and close the case.

SO ORDERED.

Dated: September 1, 2026
New York, New York

ANALISA TORRES
United States District Judge

[3] To the extent not explicitly discussed above, the Court finds no clear error in the unchallenged portions of the R&R.